All right, this court is now in setting. Please be seated. Would the clerk call the next case, please? 3-16-0091, People of the State of Illinois, Appellee, by Eric O'Connell v. Nancy Rish, Appellant by Stephen Becker. Mr. Becker, good afternoon. For the record, my name is Stephen Becker, and along with my co-counsel, Margaret Byrne, we represent the petitioner-appellant Nancy Rish. Your Honors, Nancy Rish has maintained her innocence now for over 30 years in a case in which there was no physical evidence whatsoever linking her to the crime, and in a case in which it was based solely on accountability. Because both the Attorney General in its motion to dismiss and the trial court judge here used the wrong legal standard as detailed in Issue 1 of our brief, I would like to concentrate today instead on Issue 2, which relates... Just briefly, what's our standing on the view, you know, if you use the wrong legal standard, it's not going to be used in Oval. It is in Oval, Your Honor, that's correct. It really doesn't matter what standard they use, does it? That's why I'm moving right to Issue 2. So, Your Honor, I wish to address the question whether under the proper second-stage leading standard for post-conviction, the new evidence that we have produced is of such a conclusive character as it would probably change the result on retrial. Now, to properly make this assessment, the Court, it's essential that the Court looks at the quantum of evidence that we have, and it's important in this case, it's over 30 years old, and during that time, much of the circumstantial evidence that was originally used against Nancy Rish is no longer viable against her, based on the new evidence, as well as the appeal court rulings that this Court has previously made. So I would like to review with the Court, because of the essential nature of the facts of the case, the evidence that is no longer viable against Ms. Rish, and then the evidence that still is, so the Court can make an appropriate conclusion regarding the conclusive nature of the new evidence. One of the most critical pieces of evidence against Ms. Rish was the argument made by Mr. Ficarro in his closing argument to the jury that Ms. Rish, in fact, made the first phone call that lured Stephen Small away from his home. Well, we have now the affidavit of Danny Edwards, and he says in both his affidavits that he made all of the ransom calls, including in his supplemental affidavit, the first call to the small residence. So, taking his allegation as true, as we must at second stage, that evidence is no longer attributable to Nancy Rish, but to Danny Edwards. Secondly, one of the other critical pieces of evidence that was used in the circumstantial case against Ms. Rish was the fact that she had gone with Danny Edwards to attempt to purchase still water, and as you recall... Listen, I want to back up a second on what you just said. He said he made the call. Yes. But that doesn't mean you still don't have the evidence. We don't have to look at this new affidavit in a vacuum, like this is the only evidence that's going to be presented at a new trial, when we're determining whether the affidavit, this newly discovered evidence, would likely result in a different result. Fair? No, you don't have to take it as true, Your Honor, because it's not positively rebutted by the government. We don't have to take it as that's what he would testify to, but we can also acknowledge the fact that somebody's going to testify that that first call, the voice sounded different than the subsequent calls. That evidence doesn't disappear. We just take it as true in this affidavit that this fellow would testify to that. Correct, but there was actually no evidence at the first trial that a female made a call. I mean, Ransom Small testified that the first call was made, and that the other call that was made was a different voice, but it was still a male voice. And so, I mean, our contention is all the time this was prosecutorial misconduct on the part of the prosecution. This was an argument made for the first time in closing rebuttal argument. But for purposes of where we're at right now at second stage, this is a cleaning stage. And so, yes, you are allowed to look at the trial evidence, but for purposes of where we're at right now, whether this goes to an evidence you're hearing, Mr. Edwards' affidavit, his opinion has to be taken as true because it's not positively rebutted by the record. So the second major piece of evidence that was put in against Ms. Rich at the trial was that she was attempting to buy water with Danny Edwards. And because, as you might recall, a jug was found in the box in which Stephen Small was buried. There were three witnesses, no less than three witnesses, called by the state during the trial to attempt to establish this. But as this Court is aware, in the appeal in 2003, this Court found that there was a discovery violation on the part of the state. And actually, there was an Illinois State Police report saying that they had compromised or contaminated the liquid that was in the particular jug that they had. And so the majority found it to be a discovery violation, and Justice McDade, in her dissent, found it to be a Brady violation. So because there was no evidence that the particular water that was used, or whatever liquid it was, can be associated with Nancy Rich, these witnesses would all go out because that evidence could not be put in. And so this was used at the trial. And actually, the prosecutor used a big map and put stickers of jugs all throughout the area to try to influence the jury. So this was another critical piece of evidence, which no longer exists in light of the appeal. A third critical piece of evidence, which is no longer valid against her, was a testimony of James Whitworth. Now, he was a farmer, and he claimed that the day before the kidnapping took place, he saw a white van in the area of Pembroke Township, near where the gravesite of Stephen Small was later found. And he said that he saw a white van. Inside the van was an individual with dark hair and also someone who was blonde. He could not determine whether it was a male or a female. But the evidence that has come after that time, which we included in our close conviction petition, is that Nancy Rich has an alibi at that time. And we've included a stipulation of phone calls from the common law record indicating that, in fact, she was 15 miles away at the time talking with the jury. She had her alibi 30 years ago, right? This alibi was not raised 30 years ago. Well, it could have been. It could have been. That's not her alibi. She was somewhere else. It's not newly discovered, is it? This particular alibi may not be newly discovered, but the court can consider documents, records, and other evidence that can affect its ruling on whether this is conclusive. So that is correct, Your Honor. Tell me about the alibi. What was the alibi? She was actually on the phone call with a lady named Anita Hamilton, who was her hairdresser. And what day was that? And that was the day of September 1st, right during the time period in which Mr. Whitford said that he saw this van going toward the gravesite and then leaving. So she could not possibly have been the individual in the van. And this, of course, was a critical piece of evidence that was used against her at the trial to imply that she actually went with Danny Edwards to the gravesite to help him prepare it. So this is important. Cell phone? A cell phone? No, it was a regular phone, I believe, at the time. So it was a landline. It was a landline that was someplace else. Yes, it was at her house, and they have a listing, actually, in the stipulation that it was Anita Hamilton's number that she was calling. Did she testify at trial? She did. She did. She placed herself with Mr. Edwards in the vehicle on multiple occasions throughout the two- or three-day period that these events unfolded. That's correct. But none of that changes because it came from her. Correct. But this incident was different. The individual, Mr. Whitford, claimed that this was the day prior to the kidnapping on September 1st and that he had seen the van in the area near the gravesite. So now we know she was on the phone with someone else. She could not have been the- This doesn't even seem very relevant, though, if it was the day before. Well, the prosecution was the one who raised it, so that's- We can mark that off as now there's an alibi for the day before. Thank you, Your Honor. Another important piece of evidence was the claim by the prosecution that Ms. Risch was with Danny Edwards when he purchased certain items that were used for the kidnapping, particularly with respect to the box. And as you'll see from Danny Edwards' affidavit that we've attached, he said that is, in fact, false. His amended supplemental affidavit says that Nancy Risch did not go into the store with him when he purchased certain electrical staffs, and, in fact, he did not even use these in the kidnapping at all. So that's another critical piece of evidence that is no longer attributable to Ms. Risch. But she testified that she went to the store with him in her testimony during trial. She said she rode in the van, but she did not go inside the store with him, and that's what his affidavit clarifies. So she did not know what fact he purchased. Mr. Becker, I'm just curious why 30 years has gone by and this hasn't happened before now. Because, Your Honor, recently we obtained the affidavit from Mr. Edwards. Mr. Edwards was involved with his appeals for almost 20 years, and so what actually happened is there was a reporter who was doing a story on the case, and based upon that, Mr. Edwards became willing to provide an affidavit. And so that's the time that we obtained the affidavit. So it took all this time because his attorneys told him, we don't want you coming forward with any information because it could affect your appeals. And Mr. Edwards waited until after his appeals were over, and this information only came out because he finally became willing to talk because he became very ill, he's close to dying, and we ended up taking an evidence deposition of him because we were afraid of his health, so that if we would get to an evidentiary hearing, we could use his testimony. And also he said that he had become a Christian in the meantime and he needed to tell the truth, and so this is why he came forward. And in the case of Pinknickle v. Loftin, Mr. Loftin was actually my client, in the appellate court, the court said that the question of why an individual may wait so long is a proper inquiry, but it cannot be made until the third stage. So we have stated the facts that we obtained the affidavit, but that's something that would be decided at third stage. But by the trial court, are you saying we can't ask? Well, you can ask me anything you want, but I'm just basically saying that as far as the law is concerned, at least the Loftin court said that this is not a proper inquiry at second stage because in Loftin what happened is the witness actually came forward, I believe it was after 12 years, and so there was a question made by the trial court and the appellate court said this should wait until third stage. Any inquiry as to why it took a person so long to come forward is more appropriate at the third stage. And so the last piece of evidence. Before you go there, don't lose your thought, but Mr. Edwards' affidavit says, well, she didn't go into the electrical supply store with me. Correct. She waited in the van. Correct. How is that new evidence? Because that's exactly what she testified to during the trial, that she didn't go into the store, she went to the electrical supply store, she waited in the van, and she did not know what he purchased. So how does Edwards' information, how is that likely to change anything? Well, because the state made a very big thing during the trial that Nancy Rich was purchasing items that were used for the kidnapping, and she did not go into the store, so that's why Mr. Edwards did that clarification in the affidavit. Nancy told the jury the same thing. Yes, yes, yes. And it was up to them to believe her and not believe her. It was, but Mr. Edwards put this in an affidavit, and I'm trying to rebut what the state said at the trial. Nancy also told the jury that she wasn't aware of what Edwards was doing, and he didn't tell her, ever explain to her what he was doing. That's correct. That's correct. So his new affidavit isn't really new evidence, is it? Well, certainly it is, Your Honor, because he did not testify at the trial. And when we were here at Second Street... The jury had that testimony from her. But not from Danny Edwards. That's the whole point, Your Honor. We had the testimony of the person who committed the conspiracy, that did the kidnapping, and ended up... Okay. You can't conspire with yourself, can you? You cannot, Your Honor. That's the whole purpose that we're here, is now that the person who committed the crime has come forward and said that Nancy didn't know anything about it, I committed it all by myself, I did not tell her, and I affirmatively concealed the crime from her. And the question for this Court is, how would that affect a jury given 30 years it's happened, all the circumstantial evidence that no longer connects Nancy Rich to the crime? What would a jury think about the perpetrator coming forward and saying that Nancy knew nothing about it? That's what this is all about. And he... But even his affidavits put some incriminating evidence in there with respect to your client. He says she drove him, you know, picked him up all hours of the night, drove him to pay phones, to make calls. She had a phone in her house, didn't she? Isn't that how she created her alibi? Saying she was on the phone with her dresser? She didn't create an alibi. She happened to be on the phone at the time the prosecution brought in evidence. But clearly, yes, she was there at certain times when he made phone calls. The difference is, this is not just... The State doesn't just have to prove that Nancy Rich was with him. The State has to prove specific intent that she attempted to promote or facilitate his conspiracy. That's what the issue is in this case. And her job is to determine whether this newly discovered evidence is likely to change a result if there were a new trial. Fair? That is correct, Your Honor. That's exactly right. And that's what we're here for is to determine whether the perpetrator coming forward saying that Nancy Rich had nothing to do with it, and that he concealed the plan from her, that he bullied her, and all these things, if that would change the jury's view on retrial. That's precisely what we're here for. And taking that testimony as being true for purposes of the motion. I'm not sure I understand your argument how that would change the result when the best evidence is coming from Nancy, who testified in her own defense that she was bullied. She gave multiple statements with incriminating information that she later tried to recant. And she said, He bullied me. I was afraid to tell the truth. The jury had all this information, and now you want us to decide that an affidavit from the convicted murderer is going to change the outcome? Correct. How could it not, Your Honor? How could there be a jury that hears the actual person who committed the crime? Remember, there was no fission. Because it's entirely consistent with everything that she already told them. No, it's not because he didn't testify at the trial, Your Honor. I'm sorry? Danny Edwards did not testify at the trial. I know he didn't, but she did. She did, but we're here. The purpose is to have newly discovered evidence which is material, which it clearly is because it goes to state of mind. It is non-cumulative. I don't understand how it's newly discovered, because she testified to exactly the same thing. She testified it wasn't with him on August 31st. I took my son there. I wasn't with him. So I don't understand the argument that it's newly discovered just because he signed an affidavit. The jury had this information. Yes, the newly discovered prong under post-conviction law has to do with whether an individual is able prior to trial to bring a witness forward. That's what the law says. And here it was not possible to bring Danny Edwards into trial because, of course, he was a co-defendant and he had a Fifth Amendment right not to testify. And that's what the law says. All Supreme Court cases all the way down have said that, that in order to have newly discovered evidence where you have a co-defendant, if they didn't have to testify, it's newly discovered because she could not have brought them to court prior to trial. Can I add just one fact that's different from the evidence the jury already heard? This may be cumulative of what they already heard, but they heard these facts. It's not cumulative because they didn't hear it from Danny Edwards. That's the whole point, Your Honor. Okay, all right. I mean, don't you think if you were sitting on a jury... I will ponder your answer. I will ponder your answer very carefully. Thank you. But don't you think if you were on a jury, I know if I was on a jury and I heard the actual perpetrator come forward and said, I believe this woman and she didn't know anything about it and I committed it all on my own and the reason I built the box was because I didn't want Nancy to know about it. And the reason I put a bicycle in the back of the car is because I didn't want Nancy to know that I was making a call. And the reason I had her parked 15 feet away from the pay phones each time when the car was running and I turned my back to her was because I didn't want her to know what I was doing. That, to me, would be extremely probative evidence that a jury would want to hear. And I think in a case like this where there was no physical evidence connecting Nancy Rich to the trial, it was entirely circumstantial, as Justice McDade mentioned... What Nancy Rich testified to is that he didn't want me to know. She testified, I didn't know. So I think we're just going to have to move on because we're going to have to agree to disagree until I can ponder this a little more. Very good, Your Honor. Thank you. So in this particular case, the trial judge claimed that Danny Edwards, his affidavit was not admissible evidence. And that's basically why he denied relief. That's simply erroneous. Under the law, under Rule 701 of the Illinois Rules of Evidence, state of mind can certainly be testified to by a lay witness. Or that witness's state of mind, but not another person's state of mind. Oh, certainly, Your Honor, they may. For example, we have cases where someone is suicidal. Someone who is close to that person can talk about it. If they are having mental instability, sanity, they can testify about it. There's been cases in which witnesses to police arrests have been able to testify regarding the fact that it may have been racially prejudiced, the arrest. I, of course, have cited the Westerfield case from the federal court where we had a very similar situation where the head of a conspiracy was allowed to testify about a co-defendant, whether that person, what they were doing and what he suspected they were doing, involved. And if one can testify to state of mind for another person involved, certainly Danny Edwards could testify based upon the external manifestations of Ms. Grish, whether she, in fact, knew that the conspiracy was going on and whether she was knowingly participating. Do you think he's going to be able to testify as to what her state of mind was? She testified what he told her, but what he did in her presence, what she saw and most likely would have heard, and things like that. And whether she figured it out or not based on what she saw and heard and did, he can't opine on it. He can, Your Honor. He can opine that based on what she saw and heard, she was so incredibly clueless she didn't figure this out? Danny Edwards can opine on, based upon her reactions to him and what he said, he can certainly opine upon her state of mind. That is admissible and competent evidence under Rule 701.  We can testify on this particular issue. As the case I cited in my brief, we can look to federal cases in order to give us guidance on this issue. And so clearly, Danny Edwards can testify as to the external manifestations that he saw from Ms. Grish. So, yes, he can. Well, he can testify to what he saw her do, external manifestations, but he can't testify what was going on inside her head. He can testify as to his perceptions of whether she knew that she was knowingly aiding him under Rule 701. It says that you can testify as your rational perceptions based on external manifestations. It has to be an issue important to the case, your, of course, state of mind, and it cannot be scientific testimony. So Danny Edwards' testimony in the affidavit meets all those under Rule 701. Thank you very much. Thank you, Mr. Becker. Thank you, Judge. Ms. O'Connell, good afternoon. Good afternoon. May it please the Court, I'm Assistant Attorney General Erin O'Connell on behalf of the people. I'd like to focus in as well on the conclusive character of Danny Edwards' testimony and the trial judge's correct conclusion that this was not sufficient to warrant an evidentiary hearing. I want to clarify two points. The first is the applicable standard here as to what is conclusive testimony. The Illinois Supreme Court in both Walter Edwards and Sanders has said we must be able to find that petitioner's new evidence is so conclusive that it is more likely than not that no reasonable juror would find him or her guilty beyond a reasonable doubt. If the Court can posit a reasonable juror who adheres to trial testimony and all the circumstantial evidence of her intent and considers alongside it Danny Edwards' testimony, if that rational juror could convict, his testimony is not conclusive and does not warrant an evidentiary hearing at this stage. The second point is what the Court has to look at in terms of whether his testimony is rebutted or newly discovered. I don't know for sure. In the reply brief there was an allegation that the only thing that can rebut Danny Edwards' testimony is Danny Edwards' own testimony in this proceeding. I'm not certain. His counsel did go through additional evidence, but the law is clear that this Court looks at the entirety of the trial evidence and that most importantly in this case turns on Nancy Risch's own trial testimony and Nancy Risch's own pretrial statements to police. There are pieces of evidence that counsel focused on in terms of the distilled water, in terms of James Whitgill, but this Court on direct appeal, when it looked at the evidence of Nancy Risch's intent, summarized those important points and it didn't cite to that evidence. It focused, and this is in the supplemental appendix at 80, it focused heavily on Nancy Risch's own testimony and her own, in addition to that, her own dishonesty in the days immediately after her arrest for this kidnapping. And to emphasize a few points about Nancy Risch's testimony, she admits that she was there at key moments of the kidnapping. It was necessary for her to be there to facilitate the actual kidnapping itself. She admits that she drove Danny Edwards from the public pay phone where he placed the call trying to lure Stephen Small out of his home. She rushed him from the pay phone to Cobb Park, which was approximately one block from his residence. Danny Edwards at that point carried out the kidnapping. Nancy Risch went home. Nancy Risch admits that she waited that night until 2.30 and then she left her house and she went to a remote rural area and she picked up Danny Edwards where he was standing next to some train tracks. This was after Danny Edwards had taken the victim in his car. We know he got there in the victim's car because he hid the car in that area. He had no way of getting back but for Nancy Risch being there, Isaiah agreed in advance at 3 in the morning. In addition to that, her assistance at key points, there's also the fact that she was present at the ransom calls at the 11.30 p.m. call and the 11.45 p.m. call. And she's never given an explanation as to why if she was not involved in this matter, she would have been present at those calls at all. This was something that Danny Edwards could have done himself. If he was really that determined to try to hide from Nancy Risch what was going on, he had no reason to involve her at that point in terms of the ransom calls because she wasn't at that point necessary, unlike the day before when her participation was essential to getting the kidnapping actually accomplished. So the court doesn't need to look only at Danny Edwards' testimony and what contradicts that. The court should start at what Nancy Risch said. And she's bound at this point to her own trial testimony and to the extent it is consistent with her trial testimony, her statements to police. And we do have the transcript of her entire interview with police. And it's rather striking in Danny Edwards' affidavit, in his second supplemental affidavit, there is a handwritten portion of the affidavit where he talks about going to this phone call, Nancy Risch's bike was put in the trunk. He says, I told her at that point that we needed to go to Jack's. Well, Nancy Risch, when she was being interviewed by police, admitted that that was a lie that Danny Edwards had told her to say. She knew at that time that they were not going to Jack's. There's statements in her interview about Danny Edwards saying he wanted to bring the bike because he didn't feel like it was safe for her to participate at this stage. She admitted that the only reason that this Jack's issue came up at all was because she said Danny Edwards told her to lie, but she knew also at the time that she was saying it that it was a lie. This court isn't in a position to judge Danny Edwards' credibility, but it should certainly view as rebutted by the trial testimony those aspects that Nancy Risch has admitted are false. There's also physical evidence that good police work discovered. Nancy Risch testified that after the phone call with the tape recorder, we don't know whether she saw the tape recorder leave her car with defendants, but she testified that he threw the tape recorder out the window. What corroborated that testimony is the officers found the tape in a ditch on a road. She ultimately admitted that around the time of the 1130 call, she knew that Danny Edwards had the tape recorder. She saw him handling it in the car. She also admitted that he had at one point flung the tape recorder out of the car. Getting a little bit into the details here, but when she was describing the route that they took from these calls, and she was in the police station, she gave a particular route. When they then took her to the scene and they said, can you show us where it was? It was a different route. It was a different route, and it was on that route that they found the cassette tape that had been ripped apart and destroyed. Another point about Nancy Risch's dishonesty here is that she knew what the most incriminating facts were to conceal. She wasn't just striking out just blindly here. She concealed, for example, the first interview that they had, she said she never went out of her house the night of the kidnapping. She knew that's when it took place and that was what was going to be at issue. Eventually, she slowly came to admit to what had happened. Initially, she said, well, I left, but I thought maybe Danny Edwards was cheating on me. So she describes going to places, looking for his ex-wife, things like that. Eventually, it comes out, and Nancy Risch is caught in inconsistencies and eventually has to admit that what she really did that night was take Danny Edwards to the pay phone to make the call to lure Stephen Small, then drove him outside of Stephen Small's house. Well, she just admitted she took him to a pay phone. She didn't admit the rest. And then she testified that he directed her to go to Cobb Park. Exactly. And she did. Right. So she doesn't say, she never admitted that she heard the phone call. Correct. I just want to make sure nobody thinks we're misunderstanding the facts. And I think it's significant, though, that it was her very last interview where she finally admitted that fact. She tried through every statement she gave to conceal the fact that she had been there at the call that was used to lure him from his house. She finally admitted that. She never said that she knew what the substance of the call was. But then Danny Edwards said, hurry, hurry, hurry, I need to get to Cobb Park right away. And she rushed in there right next to Stephen Small's house, and then immediately thereafter is when the kidnapping took place. She also denied, she said the box disappeared before August 31st. Correct. And then changed that. And that's a pretty significant recantation when she finally admitted the box disappeared much closer to the date of the kidnapping. That's true. She came up initially with, I think, a very elaborate account of an individual who had purchased her dryer, actually. Coming to the, she had step-by-step what their conversations were, saying that he had taken it months before the kidnapping had taken place. And it was when the police said, we've spoken to your son, and your son says that he saw it there just before this took place, that she said, oh, that's correct. I mean, my son is not a liar. I admit that I saw this box, for which there's really no plausible explanation, really, as to what is this mystery of the box. I think she says that Danny Edwards said it was for pool supplies or something. But it was something remarkable was taking place in her garage with respect to this box. And she knew, furthermore, that that was something that she should conceal her knowledge of when she was giving her statements to the police. What had happened with the case at the time she was interviewed by the police? The police had not found, it depends on when the interviews were. They initially arrested her and Danny Edwards on Friday, which was before Stephen Small had been found. They had no idea at that point that Stephen Small was dead or what the scheme had been. She did know immediately that this was regarding an aggravated kidnapping because that was on the search warrant. And that was how they discussed with her initially. They said, well, really, you're here because somebody saw you at a ransom call. So she knew immediately that this was a very serious matter and that she was potentially involved in an aggravated kidnapping. It was as additional evidence was coming forward at different points that she would admit additional facts. So initially the police didn't ask about a box because they had no idea that Stephen Small was in one and had been buried underground. It was after they found Stephen Small's body that they then began asking questions about that. And initially then she tried to pin the ownership of the box on an individual who had in fact purchased her dryer and who actually came to her trial to testify that he had only purchased the dryer and not the box. But that was something that didn't come up initially because police just had no idea what the scheme was at that point. And they also didn't know whether he was alive. And I think that's also significant in judging her statements. The police conveyed the importance, that sort of urgency of the case that someone had been kidnapped from his home and that they were unsure at the time whether he was alive or dead. And when faced with those circumstances, the petitioner's first impulse was to lie as much as possible. To hide the fact that she had been involved at all and that Danny Edwards had been involved at all. Her inclination was not to give as much truthful information as possible so that they could hunt down or find this individual before something might happen to him. I mean, little did anyone know at the time that he was no longer alive. But that does seem rather striking that her initial impulse was rather than to assist in the ways that she ultimately did, to deny any knowledge whatsoever. And even Danny Edwards, not even to initially admit that he had also been outside of the house at the time of the kidnapping taking place. Two minutes, please. So I will just really very briefly address the newly discovered aspect. It is important that much of Danny Edwards' affidavits just corroborate Nancy Rich's testimony. There are some places where I think petitioner has an argument that only Danny Edwards could provide certain things. But what really sticks out in this case in terms of newly discovered is the length of time that it's been since Nancy Rich's trial before she came up initially with Danny Edwards' affidavits. We're now 30 years after her trial. There has been approximately 10 years since Danny Edwards' own litigation ended until he signed his first affidavit. This isn't a question of Danny Edwards' credibility. It's not why did Danny Edwards wait so long. The question is, why did Nancy Rich wait so long? Why didn't she, even knowing as early as 1992 that Edwards had been willing to testify but for his own litigation, why didn't she at certain points try to obtain an affidavit from him? And the protracted nature of her own post-conviction litigation I think is important to consider here as well. She has been counseled. She was counseled up until 2013 on her federal habeas petition. So it's not that we're saying that Nancy Rich needed somehow to research Danny Edwards' whereabouts. She had counsel working for her at every step and continually supplementing and amending the post-conviction petition to add new claims. That counsel should have, on her behalf, gotten an affidavit from Danny Edwards if Nancy and counsel believed that this was conclusive proof of innocence. And I would also just note very briefly that to the extent of any due diligence requirement at all it is notable that petitioner waited more than a year after she obtained Danny Edwards' affidavits to even file the successive post-conviction petition in the trial court. I don't think that that has been explained in any way but even considering the amount of time, the length of time that had passed there was still no diligence shown in getting this before the court and really to the potential prejudice of the state here that these witnesses would potentially testify in a new trial and were now 30 years out from the events. And so the court should find, in addition to the fact that there is no conclusive nature to Edwards' testimony that she's also failed to show that it was newly discovered and we would ask the court to affirm. I'd like to ask a question. Is there anything in the testimony of Nancy Rich that you've just gone through that would be inconsistent with how she would have testified if she, when she learned that there had been an aggravated kidnapping and she started putting together in her mind some of the things that had happened some of the things that she'd seen and realized that she might be accused of being an assessor? In terms of does that explain her failure to initially come forward with the information? And the ways that she responded with regard to things as well. Well... And I think that we need to be looking at this from her perspective. To some extent, right. In terms of the statements and the inconsistencies. But I would note really what the court's focus should be is on Nancy Rich's trial testimony. And Nancy Rich's trial testimony makes clear the level of her participation in this. And it is notable that she initially denied being there for the points at which she ultimately testified she was present in terms of driving Edwards to the house and picking him up from the rural area. So ultimately it's her testimony that the court should weigh against Danny Edwards' new affidavits and their conclusiveness. And we should be looking at that in terms of determining whether her claims or Danny Edwards' affidavit is affirmatively rebutted by the rec. Correct. And in particular, it's the sort of conclusory allegations of the affidavit that are most clearly rebutted. So he says, when he says, I committed this on my own. Well, that's really not true because Nancy Rich admitted she was there. Taking this aside from the intent, he did not commit the crime alone. Nancy Rich helped him do it. So the fact that he is giving these blanket sort of statements and telling him to exonerate her, I think the court has to look really closely at the extent to which that does not mesh with what Rich admits actually took place. I have a question. Sorry. Her first statement was before it became a murder. Yes. The first several. She was found accountable for both kidnapping and murder. Correct. So when it was still a kidnapping, did she say, you know what, there was a box, there was a big box in my garage and it's gone? No. So the jury can infer from that circumstantial evidence whatever juries infer. Correct. And just to be clear, it was felony murder predicated on kidnapping. So to the extent she needed an intent to facilitate, once she helped to facilitate the aggravated kidnapping, she was accountable under a felony murder provision for the death of Stephen Small. We don't even know if there was a murder at the time of the first interview. Correct. He could have been. Right. The second issue that I'd like you to touch upon is the admissibility of Danny's statement that she knew nothing. This affidavit is, I didn't tell him anything, but they want to admit testimony that she didn't know anything. Can you speak to that with regard to Rule 701? To some extent. Danny Edwards can testify to what he told her. He can even testify to what he observed in her demeanor. That's not in the affidavits right now. I understand this to be more of a hypothetical that under Rule 701 we could go beyond the affidavits and he can talk about demeanor, but that's not in there right now. All right. So would you speak to your opponent's statement that under 701 he certainly can testify to her state of mind? What is your position on that issue? What he can't testify to is what exactly was inside of her mind. He can't say Nancy Rich knew this or didn't know this. He can testify to circumstantially things that a person could use to infer whether someone is aware of what is going on. We don't dispute that that would be the case. That didn't really come up a lot below because that's just not the sort of thing that's being addressed in the affidavits. But if there were, say, an offer of proof that his testimony would be, well, this was our conversation and she seemed confused, I mean, I think that some of that would be admissible under Rule 701. But the affidavit now is she didn't know. Correct. The affidavit is much more conclusory, and then there are portions of the affidavit where he says that he didn't tell her certain things, and I think that that would be a fair area. But even to the extent it's admissible, another person's testimony can't be conclusive as to someone else's state of mind because he can't know what was in her mind. He can only testify to circumstantial things that he could have used to infer. You've answered my question. Okay. I appreciate that. Thank you. Thank you. Mr. Becker, rebuttal. Yes, thank you. Yes. Thank you for the rebuttal, Your Honors. You were correct, Justice McDaniel, when you talked about we need to look at this from Nancy's perspective. What I heard from the Attorney General was basically a closing argument in a light most favorable to the state. That's not where we're at right here. We're at second stage post-conviction proceedings when there are no credibility or reliability determinations made, and when we take all the facts as being true unless positively rebutted by the record, and in a light most favorable to the professional. I don't think that's exactly right. I think we look at this newly discovered evidence that you say you have, and then we look at it in light of all the other trial evidence that would come in and say, would this, not just if, and look at that all together and think, well, if now we throw this new evidence in with the evidence that we know is out there that occurred at the trial, would the result most likely be different? Correct? Correct. As far as conclusiveness, that's what the court looks at the trial record, any appeals, and also the record evidence, affidavits, and documents that have been put in by the petitioner. That's correct. That's what the assessment would be. But in making that assessment at second stage, which is a pleading stage, you have to take this in light most favorable to the petitioner. It would be at the third stage when we're at an evidentiary hearing that these kind of credibility determinations are being made. The third stage is only a credibility determination because then the affidavit supposedly comes in and testifies so the judge gets to see it. Correct. Not just, well, I don't believe a word you're saying, but you just say, okay, this person was supposed to be happily believable, but in light of all this other evidence that's out there, is this testimony going to change things in front of the jury? Right. But you have to take what's in the affidavit for purposes of that determination at second stage as being true and in a light most favorable to Ms. Rich. Well, if an affidavit says day is night and black is white, then you don't have to say, gee, we've got to take that as true, so therefore they get a new trial. Well, that's just where we get into if evidence is positively rebutted by the record, then that's correct. This court does not need to consider it in the same manner. There's no evidence that what Danny Edwards said in his affidavit has been positively rebutted by the record. Well, answer me this one. The morning that there was witness testimony, the morning that there were times when she was seen casing around in his car with Danny Edwards, but then there's testimony that the morning that he went missing, she was driving his van through the victim's neighborhood by herself. There were allegations of that. Nancy Thacker testified that she saw this van in the alleyway. This was prior to any crime being committed, and that she saw a blonde woman, but what she didn't report is who the identity of the person was. She didn't report that until two months after Nancy Rich was arrested, and when she saw her pictures all over the newspapers and the television. And we all know that eyewitness identification is the most unreliable of all testimony, especially in this kind of circumstance. So, yes, that's evidence that could be used, but that's clearly not provident. It doesn't show any indication of a specific intent to facilitate a crime that hadn't even occurred yet. I mean, that was pure speculation on the part of the State. Well, I don't know if she's supposed to, you know, these excuses of wanting to go over to the phone booth, but then what does she, if she drives over and cases the neighborhood by the victim's house by herself, without him there, what's she looking, why is she doing that? And is she telling him what she sees or doesn't see when she's there? In other words, what's her purpose for being there? Judge, we don't know that that's not a fact. Caroline Martello testified that she saw a van in the area. She saw a person who she thought was blind in the van, but she couldn't identify the person. It could have been anybody. We have no idea this was Nancy Risch. That was just pure speculation on it, because this is a certain... But on direct appeal, the decision mentions that during her testimony she didn't rebut that. She didn't rebut that. So that was a very critical fact in the direct appeal. But also, Caroline Martello, at the time she saw the van later, Nancy was with the dog groomer later. So I assume that she could not have been in two places at once. So, again, these are all pieces of speculation that the state tried to put together in a totally circumstantial case. Lastly, Your Honors, I wanted to address just briefly the argument that the Attorney General made with respect to the fact that there was a due diligence requirement for Nancy Risch. In other words, why did it take so long for her to come forward? Mainly that argument is patently frivolous. There is no law anywhere that says that an actual innocence petitioner is required to have due diligence after the trial. The case of People v. Smith, which we cited and which the Attorney General acknowledged is directly contrary to their position, said that it's only prior to trial that the party has to demonstrate they could have brought the witness forward. And this has been done in numerous Illinois Supreme Court cases as well as appellate court cases. The state doesn't have a name. In some cases, one year is due diligence. Pardon? In some cases, complicated murder trials, one year is due diligence. But we're talking here, Your Honor, in the context of an actual innocence claim in a post-conviction setting. I understand. It's just a year delay. Right. It's not a long delay. Right, right. It's not. It's not a long delay. It's not. It's not at all. So thank you very much, Your Honor, for your time and attention. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and issue a written decision as quickly as possible. The court will stand at brief recess for a panel exchange. All right. Court is adjourned.